**Denise Filaski**
**219 Waterside Rd.**
**Northport, NY 11768**
**(631) 754-5026**

May 9, 2006

Honorable Sandra J. Feurstein,
U.S. District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722-4438

Docket No. CV-06-1019 (SJF)

Dear Judge Feurstein,

I received a letter from my attorney, Christopher Murray, on May 3, 2006. Mr. Murray's letter states that, "there is no further action within the contents of this lawsuit that is required by my firm."

I disagree with Mr. Murray's opinion. I have discharged Mr. Murray as my legal council for this matter. As a consequence of this unfortunate turn of events, I respectfully ask the Court for a continuance and a stay until I can consult with substitute counsel. Until I consult with legal counsel I shall proceed pro se in this action.

The central issue in this matter is my petition for a preliminary and permanent injunction enjoining the defendant from altering my son's educational placement. Complaint, p5, ¶ 26 through ¶28. This issue arose from two events:

1. The Defendant (a Local Education Agency) wrongly disciplined my son before conducting a Manifestation Determination under the Discipline Provisions of 20 U.S.C. § 1415. The LEA suspended my son for a period in excess of 10 days without benefit of his due process rights under that provision. These events and claims are still in Dispute and are not inconsequential in nature; they can have a far reaching impact on him personally, in school, in the community and can seriously impact his future opportunities.

2.    The excessive suspension, which eventually became an unlawful expulsion, did in fact alter his educational placement, which is a violation of 20 U.S.C. § 1415 and a violation of my son's procedural safeguards and his rights to due process under that provision.

1

The two events I describe above are not frivolous violations committed by the Defendant. These two violations go to the heart of this matter as well as to the heart of how we as a society permit our public schools to regard disabled students. The procedural safeguards and rights to due process afforded disabled students is not unique to the IDEA. The principle of fundamental fairness, which runs through our system of laws are imbedded into 20 U.S.C. § 1415. For example,
The Local Education Agency must give the student's parents notice, no later than the date the decision to take disciplinary action is made, concerning the rights that they and the student have to appeal a discipline decision. Section 1415 (k)(1)(H). The Defendant in this matter failed to follow this fundamental element of fairness. Of all the federal civil rights related Acts, the I.D.E.A. provides disabled school aged children with more procedural safeguards and constitutional protections than any other.

I mention the scope of the procedural safeguards and constitutional protections to impress upon the Court the extent to which the Defendant has overstepped those safeguards and rights in an effort to enhance its own interests and ends.

For example, on May 4, 2006, the Defendant served yet another demand on me to consent to a release from the Defendant. To clearly impress that demand on me, the Defendant threatened to initiate a complaint against me with the Suffolk County Office of Child Protective services for educational neglect. The threat from the Defendant is, in my opinion, an arrogant abuse of State Power that has harmed me as well as my son's reputation and well being. Individuals employed by the New York Public School act under color of state law, and should not be permitted to abuse students or their parents. Furthermore, the Defendant made its latest threat shortly after I informed the District that I intended to appeal the suspension and follow the procedural safeguards and report the Defendant's defective and unlawful Manifestation Meeting and other offensive and discriminatory actions at that meeting.

This meeting, which this court admonished Defendant not to hold until a decision about the records I requested was decided, violated various IDEA and Section 504 procedural safeguards, which left me to face a Manifestation Meeting without relevant documents and records to present as evidence on behalf of my son. The relevant documents and records I speak of were not trivial or "personal notes kept in the sole possession of the maker" as alleged by defendant. What I requested and needed for the Manifestation Meeting is defined by 20 U.S.C. 1232g. Moreover, 20 U.S.C. 1415(b) (1) requires school districts and state education agencies to provide "an opportunity for the parents of a child with a disability to examine all records relating to such child..." 29 U.S.C. 794 and 34 CFR 104.36

Parents also have the right to appeal, and the State Education Agency or the Local Education Agency must arrange for an expedited hearing. Section 1415(k) (3). Defendant in this case did an end-run around this fundamental principle of fairness. Section 1415(k)(1)(A)-(F) requires that when a student with a disability violates the student code of conduct, whether the Local Education Agency can use typical

2

disciplinary measures or must apply the differing treatment exceptions depends upon the context of the violation and what disciplinary actions the school proposes to take. Defendant in this matter failed to afford my son the fundamental fairness for disabled students required under 1415(k) (1) (A)-(F) The 2004 amendments added a provision that allows school personnel to consider "any unique circumstances on a case-by-case basis when determining whether to order a change of placement for a child with a disability who violates a code of student conduct." Section 1415(k) (1) (A). The Defendant in this case ignored § 1415(k) (1) (A) and failed yet again under the principle of fundamental fairness by turning a suspension into an unlawful expulsion.

By contrast, the "change of placement for more than 10 days" is the "longer term" discipline and is governed by a different rule. If the school seeks to order a change in placement that would exceed 10 school days and the behavior that gave rise to the violation of the school code is determined not to be a manifestation of the child's disability pursuant to subparagraph § 1415(k)(1) (E), the relevant disciplinary procedures applicable to children without disabilities may be applied to the child in the same manner and for the same duration in which the procedures would be applied to children without disabilities, except as provided in Section 1415(a)(1) although it may be provided in an interim alternative educational setting. Section 1415(k) (1) (C). The Defendant used none of the procedural safeguards and due process procedures to expel my son for a period that exceeded 10 days. Furthermore, the school would have been required to follow the Discipline rules for all children in school, disabled or not, for suspension of five days or less: The district did not even follow those basic rules. In fact, my son's behavior was determined to be a manifestation of his disabilities – but after he had been expelled for a long, long time. He was later permitted to return to school on this month, having been out of school without due process, without almost any education services, and without fundamental fairness for approximately Sixty One days.

I write of this to illustrate to her Honor that Mr. Murray is, in my opinion, wrong. Viable claims in this case remain before the Court and they must be heard. I intend to consult with an attorney to fully prosecute the claims I have filed on behalf of my son. My son's suspension from school is being appealed on three grounds: (1) The Manifestation Determination the school belatedly found the behavior for which the Defendant suspended him were, after all, a manifestation of his disabilities; (2) The Defendant continues to withhold its investigation information, documents and records I have attempted to obtain through this Court. Of; and (3) The Defendant also prohibited me from having an opportunity to present evidence or witnesses or cross examine his various accusers at the Suspension and Manifestation Meeting and the numerous school delays.

To me, these are as clear a denial of my son's right to due process as there can possibly be. As one result of these wrongs, the Defendant changed my son's educational placement without due process, and with little instruction. By doing so, the Defendant clandestinely made an end run around the procedural safeguards. Let me explain: Following the clandestine change of placement, which is an educationally inappropriate placement, that placement automatically becomes the "stay put" placement under § 1415

3

(k). Further, the District smoothly turned my original disagreements about the appropriateness of my son's IEP into an ongoing discipline issue for the distinct purpose of taking advantage of 1415(k)(4).

Section 1415(k) (4) provides the exception to the rule for disciplinary placements: "When an appeal under paragraph (3) has been requested by either the parent or the local educational agency – the child shall remain in the interim alternative educational setting pending the decision of the hearing officer or until the expiration of the time period provided for in paragraph (1) (C), whichever occurs first, unless the parent and the State or local educational agency agree otherwise." The 2004 amendments greatly expand the exceptions to the general rule that a student remains in his present placement while a due process hearing (or court proceeding) is being conducted and while awaiting a decision from the hearing officer (or court). Prior to 2004, the only exception to the rule was for guns, drugs, and serious injury.

The significance of the District's maneuver is that my son's "stay put" was the current placement at the time I filed this matter with this Court. See § 1414(k). Away from this Court's scrutiny, the Defendant changed his placement to an alternative placement, which, if left in place by this Court, becomes his "stay put" placement in spite of the automatic injunction at §1415(k).

My son has strong federal and state constitutional rights to a free appropriate public education. He has a constitutionally recognized personal and property interest in a free appropriate public education, and the state now says to parents in the matter now before this court that parents will be punished if they attempt to enforce those rights or communicate on behalf of their children. Punishment of parents by intimidation and harassment is foul enough: But to punish the parents by harming their children is unconscionable.

On May 4, 2006, the Defendant served yet another demand on me to consent to a release from the Defendant. To clearly impress that demand on me, the Defendant threatened to initiate a complaint against me with the Suffolk County Office of Child Protective services for educational neglect. AF is also being punished for his self advocacy and requesting a class transfer in Social Studies.

The threat from the Defendant is, in my opinion, an arrogant abuse of State Power that has harmed me as well as my son's reputation and well being. Individuals employed by the New York Public School act under color of state law, and should not be permitted to abuse students or their parents. Furthermore, the Defendant made its latest threat shortly after I informed the District that I intended to follow the procedural safeguards and report the Defendant's defective and unlawful Manifestation Meeting. This meeting, which this court admonished Defendant not to hold until a decision about the records I requested was decided, violated various IDEA and Section 504 procedural safeguards, which left me to face a Manifestation Meeting without relevant investigation, information or facts, documents and records to present as evidence on behalf of my son.

4

The relevant documents and records I speak of were not trivial. There are provisions in Federal and State Law and policies that require the school District to make these records available to all in advance of any meetings and to address any concerns. What I requested and needed for the Manifestation Meeting is defined by 20 U.S.C. 1232g. Moreover, 20 U.S.C. 1415(b) (1) requires school districts and state education agencies to provide "an opportunity for the parents of a child with a disability to examine all records relating to such child..." 29 U.S.C. 794 and 34 CFR 104.36.

I do not know if this letter is the proper way to ask this Court for a temporary restraining order against the Defendant to cease and desist its various punishments and discriminatory practices against me and my son. I also do not know if this letter is the proper way to ask this Court to Order the Defendant to restore my son's educational placement to his rightful "stay put" placement under § 1415(k). If this letter is not the proper way to ask the court for these two actions, then I shall prepare the proper papers to put before the Court.

In the meantime, I shall proceed pro se and try to the best of my ability to obtain an Order from this Court requiring the Defendant to hand over every original document I must have to exercise my parental rights as well as my parental rights to enforce my minor son's rights under the Family Education Records Privacy Act (FERPA), the Individuals With Disabilities Education Act, as amended in 1997 and 2004 (IDEA), Section 504 of the Rehabilitation Act, and the Americans With Disabilities Act (ADA). I shall also seek all protections afforded under these acts as well as The Protection of Pupil Rights Amendment, (PPRA), 20 U.S.C. § 1232h; 34 C.F.R. Part 98.

I shall also proceed and try to the best of my ability to obtain an Order from this Court requiring the Defendant to hand over each document to which I am entitled to see and that I must have to exercise my right to enforce the IDEA, the ADA, Section 504, and the laws of the State of New York on behalf of my son and his rights access and to fundamental fairness as he receives a free appropriate public education and due process proceedings to clear his reputation. There have been many allegation made against me by Northport- East Northport District in these proceeding that I feel need to be addressed because of their misrepresentations and inaccuracies .

The District is apparently attempting to lay a factual basis to discredit me as a parent to suit their own purposes. One of those purposes is already known: To terrify me and my family into submission by threatening to call in Child Protective Services. If the District really thought my child is in danger because of educational neglect or other child safety issues, then the school would have taken immediate action. They did not. Their intention, then, seems clear to me and I will not be threatened or intimidated or otherwise dissuaded from doing my duty as a mother to protect my child's rights to a decent education. All I ask is for the Court to give us a fair and impartial opportunity to present our case against the District.

5

In the meantime, I will obtain interim assistance to respond to defendants documents and to address some questions and/or concerns with some of the documents and letters submitted to the court, on our behalf, which we are very concerned about. Because this situation is complex and the interest of a minor child is at stake. I am respectfully requesting a stay in this case and a conference with the court.

I realize this letter discusses more than might be necessary under ordinary circumstances. I have gone into some detail to show the Court that any attempt I might make at getting any administrative remedy available to my son is not possible with this School District. I think the proper way to put it is that I cannot exhaust administrative remedies because any effort to do so would be frustrated by the District.

Please direct all correspondence and official court communications to me at the above mentioned address.

I thank the court for its time and understanding.

Sincerely

Denise Filaski

cc.   Christopher Murray Esq.
      John Mc Grath Esq.
      Jonathan Heidelberger Esq.
      John Lynch